# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION

**CIVIL ACTION NO. 3:13-cv-00170-JHM**

**UNITED STATES OF AMERICA**                                                             **PLAINTIFF**

**V.**

**JESCELL WHITTLE**                                                                             **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion to Suppress Identifications by Government Witnesses [DN 214]. Fully briefed, this matter is ripe for decision. For the following reasons, the Court holds that Plaintiff's Motion is **DENIED**.

### I. BACKGROUND

Defendant, Jescell Whittle, has been charged with several robberies that occurred in October of 2012. At the time of his arrest, he was a suspect in four specific robberies. He was also later identified by a victim in a fifth robbery and was charged with that fifth robbery as well.

The first robbery took place at a Cricket Wireless store, located at 4443 Cane Run Road in Louisville, Kentucky on October 22, 2012. The surveillance video shows a black male entering the store through the front door, displaying a small handgun to the clerk behind the counter, and demanding cash from the register. Surveillance footage from outside the store shows that the individual with the handgun had accomplices: a lookout and a getaway car driver. The lookout and the individual with the gun got out of a white SUV and headed into the store; and, after the robbery, they exited the store together. The suspect wielding the firearm acted like he was there to pay his phone bill. Taken during the robbery was business cash, business merchandise, and personal property from several customers inside of the store. The Government believes the suspect with the handgun to be Whittle.

The second robbery took place at another Cricket Wireless store, located at 3125 West Broadway in Louisville, Kentucky on October 23, 2012. This time, two persons again entered the store, acted like they were there to pay their phone bill and demanded cash from the clerk. Instead of handing over the cash, the clerk retreated to a back room. One of the individuals attempted to leap over the counter; however, he was unsuccessful. Both immediately retreated without obtaining any property.

After this robbery, Louisville Metropolitan Police Department (hereinafter "LMPD") Detective Larry Smith created a wanted poster out of still frames from the surveillance footage from the first Cricket Wireless robbery. Smith sent an email to all LMPD officers with a copy of the wanted poster and asked anyone recognizing the individuals pictured to contact him or any other robbery detective. Officer Andre Shaw immediately recognized one man pictured and emailed Smith stating that the man in the yellow hoodie was Jescell Whittle. Shaw included Whittle's date of birth and mugshot, and he explained that he knew Whittle from his time working at the Department of Juvenile Justice.

The third robbery occurred at JC Cigarette Outlet at 2714 Crums Lane in Louisville, Kentucky on October 29, 2012. During this robbery, both suspects were armed with handguns. One of the robbers threatened to shoot the clerk in the foot if she did not comply. The robbers took business cash, business merchandise, and personal property from customers in the store. After the robbery, the individuals retreated to a white SUV.

The fourth robbery took place at a Thornton's gas station store located at 4516 Poplar Level Road in Louisville, Kentucky on October 30, 2012. The charges related to this robbery have since been dropped. (Order [DN 235] at 1–2.)

The fifth robbery took place at a Speedway gas station located at 3030 Taylor Boulevard in Louisville, Kentucky, on October 31, 2012. The surveillance video of the Speedway robbery shows that three black men entered the convenience store wearing hoodies. During the robbery, the men order the customers to get on the ground. They then took property from the customers, and one of the robbers, allegedly Whittle, discharged his weapon, shooting one customer in the back.

Later that day on October 31, 2012, Detective Keith Simpson created two photo packs. These photo packs contained six photographs each. Simpson specifically included Whittle in both photo packs. He used the MUGS computer system to find similar looking photos of individuals in order to fill the remaining five spots in each pack.[1] At 10:00 AM on October 31, 2012, Simpson brought a photo pack to the Speedway store that was robbed earlier that morning. He spoke to Tim Nored, a Speedway employee who was still on duty, and asked Nored to make an identification, if possible, from the six photos in the photo pack. Nored picked photo #5, which was not Whittle. Later that day at 12:58 PM, Detective Crowell took the second of the two photo packs to the Speedway and spoke with Justin Durbin, who was a customer at the time of the robbery. Crowell asked Durbin to identify, if possible, the man who robbed him and the store. Durbin made an identification of photo #5, which was Whittle's photo, from the second photo pack.

On November 8, 2012, the cashier who was robbed at JC Cigarette Outlet, Amanda Duke, saw a picture of Whittle on the news after his arrest by LMPD earlier that day. She immediately recognized him as the man who robbed her. Although it is unclear whether she told her supervisor of what she had seen or whether she contacted Detective Ricky Guffey directly,

---

[1] It is unclear whether Simpson made both photo packs prior to the Nored identification or whether Simpson made one photo pack prior to the Nored identification and one afterward.

she ultimately met with Guffey at the police station. Upon arrival, she showed Guffey a photograph that she had pulled up on her cellphone of Whittle. The photo came from the news feed on her Facebook page. She identified the man as the individual that robbed her. Guffey held the phone with the photo displayed up to the camera that was recording their interaction. Guffey did not indicate to Duke that she had or had not identified the correct individual. After this identification, Whittle was charged with the robbery of the JC Cigarette Outlet as well.

## II. DISCUSSION

Defendant now asks the Court to suppress three categories of evidence. First, Defendant requests that the identification made by Justin Durbin in connection with the Speedway robbery be suppressed due to the unnecessarily suggestive content of the photo packs. Second, Defendant asks the Court to suppress the identification made by Amanda Duke because of unnecessarily suggestive law enforcement conduct. And, third, Defendant requests that the Court suppress any lay opinion testimony that resulted in identifications of Defendant. The Court will address these issues in turn.

A defendant's right to due process of law is violated if the "confrontation leading to the identification was 'so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law.'" Haliym v. Mitchell, 492 F.3d 680, 704 (6th Cir. 2007) (quoting Stovall v. Denno, 388 U.S. 293, 301–02 (1967)); United States v. Parker, 17 F. Supp. 3d 667, 674 (W.D. Ky. 2014). The defendant "bears the burden of showing impermissible suggestiveness." Howard v. Bouchard, 405 F.3d 459, 469 (6th Cir. 2005) (citing United States v. Hill, 967 F.2d 226, 230 (6th Cir. 1992)).

The Supreme Court has stated where the "indicators of [a witness's] ability to make an accurate identification" are "outweighed by the corrupting effect" of law enforcement

suggestion, the identification should be suppressed. Perry v. New Hampshire, 132 S. Ct. 716, 725 (2012). Therefore, the Court must first determine whether the identification procedure was suggestive. See Thigpen v. Cory, 804 F.2d 893, 895 (6th Cir. 1986). A defendant cannot be subjected to the introduction of evidence of identifications that were obtained through impermissibly suggestive procedures. Simmons v. United States, 390 U.S. 377, 384 (1968). In examining whether the identification procedure was impermissibly suggestive, the "primary evil to be avoided is a very substantial likelihood of irreparable misidentification." Neil v. Biggers, 409 U.S. 188, 198 (1972) (citing Simmons, 390 U.S. at 384 (1968)).

However, even identifications obtained through suggestive means may nonetheless be admissible provided they are reliable. Manson v. Brathwaite, 432 U.S. 98, 116–17 (1977); Neil, 409 U.S. at 199. If found suggestive, the Court proceeds to evaluate whether "there are nevertheless sufficient independent indicia of reliability." United States v. Hill, 967 F.2d 226, 230 (6th Cir. 1992). "Reliability is the linchpin in determining the admissibility of identification testimony." Manson, 432 U.S. at 114. Factors to be weighed in terms of reliability of identification include: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the time between the crime and the confrontation." Parker, 17 F. Supp. 3d at 675 (quoting Neil, 409 U.S. at 199–200).

**A. Durbin's Identification**

Defendant first argues that the photo pack presented to Durbin, a witness to the Speedway robbery, was impermissibly suggestive. Among the factors the Court must consider to determine whether the photo pack was suggestive are "the size of the [photo pack], the manner

5

of its presentation by the officers, and the details of the photographs themselves." United States v. Stamper, 91 F. App'x 445, 459 (6th Cir. 2004) (quoting United States v. Sanchez, 24 F.3d 1259 (10th Cir. 1994)). The Supreme Court has stated that the risk of misidentification from a photo pack increases where (1) "the police display to the witness only the picture of a single individual who generally resembles the person he saw;" (2) the police show the witness "the pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized;" or (3) "the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime." Id. at 460 (quoting Simmons, 390 U.S. at 384). In short, an identification based on a photo pack is unduly suggestive if the circumstances "steer[] the witness to one suspect or another, independent of the witness's honest recollection." Williams v. Lavigne, 209 F. App'x 506, 510 (6th Cir. 2006) (citing Wilson v. Mitchell, 250 F.3d 388, 397 (6th Cir. 2001)).

Here, Defendant argues first that the photo pack was unduly suggestive because Defendant was the only one of the six individuals with a medium length haircut, the only individual without facial hair, and the youngest individual pictured. However, a photo pack is "is not unduly suggestive 'merely because the individuals . . . differ in facial characteristics.'" United States v. Yancy, No. 11-20108-STA, 2012 WL 1252526, at *8 (W.D. Tenn. Apr. 13, 2012), aff'd, 725 F.3d 596 (6th Cir. 2013) (quoting Stamper, 91 F. App'x at 461); see Grubbs v. Hannigan, 982 F.2d 1483, 1490 (10th Cir. 1993). "Rather, different characteristics may be 'suggestive where they are striking or relate to an important characteristic of the victim's description.'" Yancy, 2012 WL 1252526, at *8 (quoting Stamper, 91 F. App'x at 461). Because "[f]acial hair and hairstyles are easily changed," courts do not typically find identifications from photo arrays unduly suggestive when these traits are altered between the time of the crime and

the taking of the photograph. United States v. Lewis, 838 F. Supp. 2d 689, 701–02 (S.D. Ohio 2012), aff'd sub nom. United States v. Watson, 540 F. App'x 512 (6th Cir. 2013); see Hale v. Davis, No. 07-12397, 2009 WL 4666489, at *20 (E.D. Mich. Dec. 3, 2009). When the traits of all individuals pictured are similar, for instance, if all persons have closely-cropped haircuts, courts are also reluctant to find that the array was unduly suggestive. United States v. Reamey, 132 Fed. App'x 613, 616 (6th Cir. 2005); United States v. Escareno, No. 3:04-CR-132(1), 2006 WL 462432, at *3–4 (S.D. Ohio Feb. 22, 2006); cf. Hale, 2009 WL 4666489, at *20 (finding that even a distinctive feature, like braided hair, was not enough to render a photo line-up unnecessarily suggestive). Additionally, when the individuals presented in the photo array are of similar age, courts are generally unwilling to find this physical characteristic renders the identification procedure unreasonably suggestive. Yancy, 2012 WL 1252526, at *8; Hale, 2009 WL 4666489, at *20.

With respect to personal or physical characteristics, like a haircut or hairstyle, "unless the witness described the distinctive characteristic to the police beforehand, that characteristic is not a basis for finding a lineup unduly suggestive." Howard, 405 F.3d at 471. "A lineup is unduly suggestive as to a given defendant if he meets the description of the perpetrator previously given by the witness and the other lineup participants obviously do not." Raheem v. Kelly, 257 F.3d 122, 134 (2d Cir. 2001). The "focus of the inquiry is not whether the suspect has a distinctive feature not shared by the other participants, but whether that feature matches the description provided by the witness." West v. Greiner, No. 01 CV 1267(JG), 2004 WL 315247, at *5 (E.D.N.Y. Feb.12, 2004). Thus, the existence of a distinctive haircut alone, Hale, 2009 WL 4666489, at *20, or a certain type of facial hair alone, Stamper, 91 F. App'x at 461, does not render the line-up impermissibly suggestive.

Here, Defendant asserts that his facial hair, medium hairstyle, and age set him apart from the other individuals in the photo packs. Not one of these characteristics alone has been found to render an identification unduly suggestive. And, here, the differences are rather slight—there is no overwhelmingly distinctive facial hair, hairstyle, or age differential present that makes Defendant's picture obviously different than the surrounding five and obviously suggestive. Additionally, there is no record of Durbin describing Defendant to law enforcement at any time prior to the administration of the photo array. The photo packs themselves were not unnecessarily suggestive; therefore, Durbin's identification will not be suppressed on these grounds.

Defendant also contends that Durbin's identification from the photo pack was unnecessarily suggestive because of the instructions Detective Crowell gave to Durbin prior to displaying the photos. In Crowell's account of the interaction, he stated that he did not direct Durbin to any one photograph, he did not tell Durbin that he correctly identified the suspect, and he did not reveal that Whittle had been arrested. He also instructed Durbin not to focus on personal traits that are easily changed, like facial hair and hairstyle, but rather to focus on facial characteristics that are inalterable. Crowell indicated that he gives these instructions to every identifying witness before presenting photo packs. Defendant argues that because Crowell specifically mentioned facial hair in his instructions, this swayed and influenced Durbin into positively identifying Whittle's photograph, as he is the only individual without facial hair.

The Court finds that Crowell's instructions were not unduly suggestive. Crowell's statements did not communicate any suggestion that the suspect was in the photo pack or any suggestion as to which photo Durbin should select. The instruction to focus on facial features rather than hairstyle or facial hair, at best, could be construed as implicitly telling Durbin that the

8

suspected robber was in the array. United States v. Groves, No. 08-CR-20272 JTF/TMP, 2012 WL 4343767, at *4 (W.D. Tenn. Sept. 5, 2012), report and recommendation adopted, No. 2:08-CR-20272-01, 2012 WL 4340796 (W.D. Tenn. Sept. 21, 2012), aff'd (Apr. 9, 2014). However, similar remarks have been held to be not impermissibly suggestive. Id.; see United States v. Whitehead, 257 F. App'x 777, 783 (5th Cir. 2007) (holding that the instruction "not to focus on aspects of a person's appearance that are susceptible to change, such as hairstyle and facial hair, but rather [to] focus on unchangeable features such as 'their ears, their eyes, [and] their nose'" was not impermissibly suggestive); United States v. Porter, 29 F. App'x 232, 237 (6th Cir. 2002) (upholding the admission of a photo identification where the officer told the witness that the array contained the suspect, but did not suggest which of the six photos showed that suspect). Thus, Durbin's identification was not the result of impermissibly suggestive behavior and will not be suppressed on this basis.

Lastly, Defendant argues that the photo arrays were impermissibly suggestive because Detective Simpson created two separate photo packs. However, each witness interviewed was only shown one photo pack in order to make his or her identification. In fact, many courts have concluded that showing a witness two separate photo arrays, even when both contain a photograph of the defendant, does not in and of itself offend due process. Williams v. Lavigne, 209 F. App'x 506, 510 (6th Cir. 2006) ("Clearly established federal law does not mandate a finding of undue suggestiveness merely because a witness viewed multiple photo arrays and lineups before ultimately identifying the defendant."); United States v. Harris, 281 F.3d 667, 670 (7th Cir. 2002) ("[T]here is nothing per se impermissible about placing the same subject in two different identification procedures."); United States v. Maguire, 918 F.2d 254, 263 (1st Cir. 1990) ("A suspect's inclusion in two photospreads, even with the same photo, is not

constitutionally impermissible."); United States v. Martinez, No. CA 11-16-GMS, 2012 WL 3059728, at *7 (D. Del. July 25, 2012) (quoting United States v. Eatherton, 519 F.2d 603, 608 (1st Cir. 1975)) (finding that law enforcement using two photo arrays was not impermissibly suggestive, as "the agents did not specify which photo to select, and the resulting identification was an 'independent decision made without difficulty.'"); see also United States v. Diaz, 248 F.3d 1065, 1103 (11th Cir. 2001) (affirming district court's finding that identification procedures were not unnecessarily suggestive where witnesses were shown different photo arrays on two different occasions weeks apart and presented a separate photo array six months later with a different picture). Accordingly, the use of two separate packs was not unnecessarily suggestive by law enforcement so as to offend Defendant's due process rights and the identifications from these packs will not be suppressed.

**B. Duke Identification**

Defendant also has asked the court to suppress Amanda Duke's identification due to impermissibly suggestive police conduct. Duke was working at JC Cigarette Outlet when she was robbed by two men with handguns. About one week later, she saw a man on the news who she identified as the man who robbed the store. Detective Guffey contacted Duke and invited her to the police station. Duke pulled up her Facebook page on her cellphone and displayed a photo to Guffey of the man who robbed her. She testified that the photo was on her Facebook newsfeed from WDRB and that the photo she showed Guffey was Whittle's mugshot.

"Due process requires courts to assess, on a case-by-case basis, whether improper police conduct created a 'substantial likelihood of misidentification.'" Perry, 132 S. Ct. at 718–19 (quoting Neil, 409 U.S. at 201). Suggestive conduct "can be created intentionally or unintentionally in many subtle ways." United States v. Wade, 388 U.S. 218, 229 (1967).

10

"Rather than equate suggestive conduct with misconduct . . . suggestive influences" can "be 'the result of police procedures intentionally designed to prejudice an accused.'" Perry, 132 S. Ct. at 731 (quoting Wade, 388 U.S. at 235); see also Wade, 388 U.S. at 236 (noting "grave potential for prejudice, intentional or not, in the pretrial lineup" and describing lack of lineup regulations addressing "risks of abuse and unintentional suggestion"). "Persons who conduct the identification procedure may suggest, intentionally or unintentionally, that they expect the witness to identify the accused." Moore v. Illinois, 434 U.S. 220, 224 (1977). The implication is that even police acting with the best of intentions can inadvertently signal "that's the man." Wade, 388 U.S. at 236; see also Kirby v. Illinois, 406 U.S. 682, 690–691 (1972) (finding that it is always necessary to 'scrutinize any pretrial confrontation"). "Suggestive confrontations are disapproved because they increase the likelihood of misidentification'—and '[i]t is the likelihood of misidentification which violates a defendant's right to due process.'" Perry, 132 S.Ct. at 733 (quoting Neil, 409 U.S. at 198).

Here, Defendant has not provided the Court with any facts that demonstrate that law enforcement's conduct was unnecessarily suggestive in any way. Unlike most circumstances, in this case, Duke, the witness, provided her own photograph to law enforcement, Detective Guffey. Guffey then made no suggestive comments to her that her identification was correct. No law enforcement action influenced her original identification or could possibly have produced a misidentification. Even if Guffey had confirmed to her that she had identified the correct individual, "there was sufficient independent indicia of reliability to keep the identification from becoming fatally tainted" because she had made a positive identification before getting confirmation from Guffey. See United States v. Monsour, 893 F.2d 126, 128 (6th Cir. 1990) (finding that despite an FBI agent's suggestive conduct in which he showed a witness

a newspaper photograph of the defendant, the witness's identification was still held reliable because the reliability from her prior description trumped any suggestive conduct). In the end, it is Defendant's burden to show that law enforcement's conduct was impermissibly suggestive. Howard, 405 F.3d at 469. Defendant has not met that burden; therefore, the Court will not grant Defendant's Motion to Suppress Duke's identification.

   C. **Lay Opinion Testimony**

Rule 701 of the Federal Rules of Evidence authorizes the admission of opinion evidence by a lay witness. "Such lay opinion testimony is permitted under Rule 701 because it has the effect of describing something that the jurors could not otherwise experience for themselves by drawing upon the witness's sensory and experiential observations that were made as a first-hand witness to a particular event." United States v. Freeman, 730 F.3d 590, 595 (6th Cir. 2013) (quoting United States v. Jayyousi, 657 F.3d 1085, 1120 (11th Cir. 2011) (Barkett, J., concurring in part and dissenting in part)). To ensure that lay testimony serves the "objective of putting the trier of fact in possession of an accurate reproduction of the event," Rule 701 provides that the witness's testimony must be: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Id. (quoting Fed. R. Evid. 701 & advisory committee's note). "The burden is on the proponent to provide adequate foundation for the testimony." Id. at 595–96 (citing United States v. Grinage, 390 F.3d 746, 749 (2d Cir. 2004)). Further, "[i]f a witness's testimony fails to meet any one of the three foundational requirements, it is not admissible." Id. (citing Fed. R. Evid. 701). However, the decision of whether or not to admit certain testimony under Rule 701 is committed to the sound discretion of the district court. United States v. Freeman, 730 F.3d 590, 595 (6th

Cir. 2013); United States v. White, 492 F.3d 380, 398 (6th Cir. 2007); United States v. Jackson, 688 F.2d 1121, 1123 (7th Cir. 1982) (citing United States v. Skeet, 665 F.2d 983 (9th Cir. 1982); Bohannon v. Pegelow, 652 F.2d 729, 732 (7th Cir. 1981); United States v. Borrelli, 621 F.2d 1092 (10th Cir.), cert. denied, 442 U.S. 956 (1980); United States v. Butcher, 557 F.2d 666 (9th Cir. 1977)).

Here, Defendant requests that the Court exclude two lay opinions from evidence. The first is that of Officer Andre Shaw, who made an identification from a wanted poster prepared by LMPD. This wanted poster used still surveillance photos from the first Cricket Wireless robbery. The second is that of Detective Ricky Guffey, who made an identification of Defendant from Duke's proffered photo and Defendant's mugshot.

With respect to Shaw's identification from the wanted poster, a number of circuits have ruled in a variety of circumstances that opinion testimony identifying a defendant from surveillance photographs may indeed be helpful to the jury and is therefore admissible in the trial court's discretion. See United States v. Maddox, 944 F.2d 1223, 1230–31 (6th Cir. 1991); United States v. Stormer, 938 F.2d 759, 762 (7th Cir. 1991); United States v. Wright, 904 F.2d 403, 404–05 (8th Cir. 1990). Such testimony is admissible, at least when the witness possesses sufficiently relevant familiarity with the defendant that the jury cannot also possess, and when the photographs are not either so unmistakably clear or so hopelessly obscure that the witness is no better-suited than the jury to make the identification. United States v. Jackman, 48 F.3d 1, 4–5 (1st Cir. 1995); see United States v. Farnsworth, 729 F.2d 1158, 1160 (8th Cir. 1984) ("A witness's opinion concerning the identity of a person depicted in a surveillance photograph is admissible if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury."); but see United States v. LaPierre,

998 F.2d 1460, 1465 (9th Cir. 1993) (excluding opinion testimony by investigating police officer identifying defendant in surveillance photograph because defendant's appearance had not changed between time of robbery and trial and officer had never seen defendant before in person).

Defendant argues that Shaw's testimony should be excluded because invades the province of the jury and is not "helpful to the determination of a fact in issue" under Rule 701. Defendant relies on United States v. Dixon, 413 F.3d 540, 546 (6th Cir. 2005), in which the Sixth Circuit found that the district court did not abuse its discretion "in excluding the identification testimony of [two witnesses] on the ground that it would not significantly aid the jury in determining whether the person in the surveillance photograph [was Defendant]." The Sixth Circuit identified several important factors for determining whether a lay witness is more likely than the jury to identify the defendant correctly: "(1) the witness's general level of familiarity with the defendant's appearance; (2) the witness's familiarity with the defendant's appearance at the time the surveillance photograph was taken or when the defendant was dressed in a manner similar to the individual depicted in the photograph; (3) whether the defendant had disguised his appearance at the time of the offense; and (4) whether the defendant had altered his appearance prior to trial." Id. (citing United States v. Pierce, 136 F.3d 770, 774–75 (11th Cir. 1998) (citations omitted); Farnsworth, 729 F.2d at 1160). "Other important factors are the degree of clarity of the surveillance photograph and the quality and completeness with which the subject is depicted in the photograph." Id. On the whole, "lay opinion identification testimony is more likely to be admissible, for example, where the surveillance photograph is of poor or grainy quality, or where it shows only a partial view of the subject." Id. (citing Jackman, 48 F.3d at 4–5 (upholding the admission of lay opinion identification testimony primarily because the

14

surveillance photos were blurry and only part of the robber's face was visible); United States v. Allen, 787 F.2d 933, 936 (4th Cir. 1986) (upholding the admission of lay opinion identification testimony where one surveillance photograph showed one individual "with his jacket hood pulled over his head so that his hair, forehead and right eye are not visible," and two other photographs were "incomplete reproductions of the man" because his face was partially hidden), vacated on other grounds, 479 U.S. 1077 (1987)). The court ultimately held that though both witnesses were indisputably familiar with the defendant's general appearance, the remaining factors weighed in favor of exclusion. Id. Specifically, the district court found that the evidence failed to establish that either of the two witnesses was familiar with the defendant's appearance at the specific time of the offense and that the defendant had not altered his appearance prior to trial. Id. at 545–46.

Defendant also relies on United States v. Calhoun, 544 F.2d 291, 294–95 (6th Cir. 1976), in which the Sixth Circuit determined that it was an abuse of discretion by the trial judge to have permitted the lay testimony by the defendant's parole officer. The parole officer's "testimony was offered solely as that of a lay witness whose close familiarity with [the defendant] at the time of the robbery enabled him to make an ordinary identification of [the defendant], as he then appeared, from the surveillance photograph which had been offered and received in evidence." Id. at 295. The court determined that in order to admit this testimony, only "one intimately acquainted with [the defendant] at the time of the robbery might conceivably be in a better position than the jury to recall his appearance then and compare it with a photograph." Id. However, the parole officer was in fact uncertain whether at the time of the robbery the defendant looked different in trial than he did at the time of the offense, as he could not remember whether the defendant "had a mustache, goatee, or sideburns; the only certainty was

that [the defendant] had 'facial hair' of some kind." Id. This was not enough for the court. Additionally, the most important defect in the testimony "was that [the parole officer's] broad assertion [identifying the defendant] could not be tempered or probed by cross-examination. The defendant could not explore the possible motives his parole officer might harbor in positively identifying him as the robber." Id. (citing United States v. Garrett, 542 F.2d 23 (6th Cir. 1976)). This would not have allowed the jury to weigh the identification testimony and make key credibility determinations. Because of the uncertainty and inability to cross-examine the officer, the Sixth Circuit found that the lay testimony should have been excluded. Id.

These cases are inapposite with regard to Officer Shaw's and Detective Guffey's testimony. Instead, the facts at hand are similar to those in Maddox, in which "[t]he trial judge allowed a police officer . . . to identify [the defendant] from a photograph seized in a raid of the drug house." United States v. Maddox, 944 F.2d 1223, 1230 (6th Cir. 1991), as amended on denial of reh'g sub nom. United States v. Arnold, 12 F.3d 599 (6th Cir. 1993). The defendant argued that the officer should not have been allowed to offer lay opinion testimony to the effect that the defendant was the person in the photograph. Id. The Sixth Circuit relied on its prior ruling in Monsour, 893 F.2d at 128–29, in which the trial court did not err by allowing a bank security guard to identify the defendant as being a person in a surveillance photograph from a robbery when the guard had seen the defendant "casing" the bank several days before. Id. at 1231. In both Monsour and in Maddox, the Sixth Circuit held that this lay opinion testimony was relevant, not prejudicial, and helpful to the jury. Because the jury had the ability "to look at the photograph and make up its own mind about the identification," the Maddox court was not unduly concerned about the prejudicial impact of such lay opinion testimony, as the jury could

evaluate the credibility of such an identification and disregard the identification if it did not consider the testimony credible. 944 F.2d at 1231.

Here, the lay opinion testimony of Officer Shaw meets all the requirements under Rule 701. Defendant only argues that it is not helpful to determining a fact in issue—here, the identity of the robber pictured in the wanted poster. When considering the Dixon factors, Officer Shaw's testimony is not without a meritorious foundation for admissibility. First, Shaw was intimately familiar with Defendant, as Shaw interacted with Defendant for eight and ten hours a day for six to eight months while Shaw was employed with the Department of Juvenile Justice. Additionally, Shaw saw and spoke to Defendant in 2011 or 2012 before the first robbery occurred. Shaw explained that Defendant looked different five or six years ago than he does today, as he had a much shorter hairstyle and was considerably younger. The photographs from the wanted posters are somewhat blurry and grainy, yet Shaw was able to immediately identify Defendant as the individual in the photographs. Because all of these factors weigh in favor of admission, and because the testimony does not appear to be patently inadmissible for any purpose, the Court will not exclude Shaw's testimony.

Detective Guffey's testimony also meets all requirements under Rule 701, as it is helpful for determining a fact in issue (whether or not Duke's proffered photo was that of Defendant and whether her identification of him was accurate). The Sixth Circuit has stated that "lay opinion identification testimony is helpful to the determination of whether a suspect depicted in a photograph is the defendant where 'there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury.'" Dixon, 413 F.3d at 545 (quoting Farnsworth, 729 F.2d at 1160). Here, Guffey's testimony is absolutely crucial in determining whether the suspect depicted in Duke's photograph was indeed Defendant because

17

no party is in possession of that photograph and it has not been entered into evidence. Therefore, the jury could not make its own identification based on that photo and the jury is not in a better position to correctly identify Defendant because there is no photo with which to compare Defendant's likeness. Guffey's testimony would be helpful in the sense that he could "describe[e] something that the jurors could not otherwise experience for themselves by drawing upon [his own] sensory and experiential observations . . . ." Freeman, 730 F.3d at 595. Therefore, Guffey's testimony will not be excluded.

### III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant's Motion to Suppress [DN 214] is **DENIED**.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

August 16, 2016

cc: counsel of record