UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 3:13-cv-00170-JHM

UNITED STATES OF AMERICA                                               PLAINTIFF

V.

JESCELL WHITTLE                                                        DEFENDANT

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Renewed Objection to Defendant's expert witness, Deborah Davis [DN 239]. For the following reasons, the Court holds that Plaintiff's objection is **OVERRULED**.

### I. BACKGROUND

This matter is set for a trial by jury on August 23, 2016. Pursuant to the Court's Order of August 11, 2016 [DN 235], Defendant has filed his supplemental expert disclosures with the court [DN 243]. Defendant intends to call Dr. Deryn Strange to testify regarding eyewitness identifications and Dr. Deborah Davis to testify regarding false confessions. Defense counsel provided the Government with its supplemental expert witness disclosures on August 10, 2016 by electronic mail. These disclosures included areas of testimony for Dr. Strange and Dr. Davis. The Government filed its renewed objections to Defendant's witnesses on August 15, 2016 [DN 235]. The Government only objected to Dr. Davis's testimony in this filing. Therefore, because the Government was provided with disclosures for both experts, the Court assumes the Government has no objection to Dr. Strange's testimony regarding eyewitness identifications.

Accordingly, before the Court is solely the Government's objection to Dr. Davis's testimony. The Government argues that her testimony is inadmissible under Rules 702 and 403 of the Federal Rules of Evidence.

## II. DISCUSSION

"Rule 702 of the Federal Rules of Evidence states that '[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.'" United States v. Langan, 263 F.3d 613, 620 (6th Cir. 2001).

In Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993), "the Supreme Court established a general gatekeeping obligation for trial courts to exclude from trial expert testimony that is unreliable and irrelevant." Conwood Co. v. U.S. Tobacco Co., 290 F.3d 768, 792 (6th Cir. 2002) (alteration omitted) (quoting Hardyman v. Norfolk & W. Ry. Co., 243 F.3d 255, 260 (6th Cir. 2001)); see United States v. Langan, 263 F.3d 613, 620 (6th Cir. 2001) (citing Gen. Elec. Co. v. Joiner, 522 U.S. 136, 142 (1997)). The Court must determine whether evidence proffered under Rule 702 "both rests on a reliable foundation and is relevant to the task at hand." Daubert, 509 U.S. at 597. A key consideration is "whether the reasoning or methodology underlying the testimony is sufficiently valid." Id. at 592–93. The Supreme Court advises that the inquiry is "a flexible one," and that "[t]he focus . . . must be solely on principles and methodology, not on the conclusions they generate." Id. at 594–95. A testifying expert must "employ[ ] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999).

Though "there is no 'definitive checklist or test' for meeting the standard of Rule 702, Daubert laid out a number of factors that typically 'bear on the inquiry,' including: whether the theory or method in question 'can be (and has been) tested,' whether it 'has been subjected to peer review and publication,' whether it has a 'known or potential rate of error,' and whether the

theory or technique enjoys 'general acceptance' in the 'relevant scientific community.'" Powell v. Tosh, 942 F. Supp. 2d 678, 686–87 (W.D. Ky. 2013) (quoting Daubert, 509 U.S. at 593–94). However, "[s]ome types of expert testimony will be more objectively verifiable, and subject to the expectations of falsifiability, peer review, and publication, than others. Some types of expert testimony will not rely on anything like a scientific method, and so will have to be evaluated by reference to other standard principles attendant to the particular area of expertise." Fed. R. Evid. 702 advisory committee's notes (2000 amend.). Still, this Court still must find that the "proffered expert testimony . . . is properly grounded, well-reasoned, and not speculative before it can be admitted," Id., despite its "broad discretion in the matter of the admission or exclusion of expert evidence." United States v. Jones, 107 F.3d 1147, 1152 (6th Cir. 1997) (citing American & Foreign Ins. Co. v. General Elec. Co., 45 F.3d 135 (6th Cir. 1995)).

Additionally, Rule 403 permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Fed. R. Evid. 403. "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." Daubert, 509 U.S. at 595 (citation omitted). "The evidence in question is viewed in the light most favorable to its proponent, but the district court ultimately has 'broad discretion' in ruling on admissibility." Journey Acquisition-II, L.P. v. EQT Prod. Co., No. 15-5966, 2016 WL 3923882, at *9 (6th Cir. July 21, 2016) (citing United States v. Poulsen, 655 F.3d 492, 509 (6th Cir. 2011)).

Defendant plans on calling Dr. Deborah Davis as an expert witness to testify as to the "general causes of false confessions, [] the specific role of interrogation tactics in generating

3

false confessions[,] and the bases of individual vulnerability to interrogative influence . . . and false confession." (Disclosures [DN 239-2] at 2.) The proponent of the expert's opinion testimony bears the burden of establishing that the expert is qualified, that the methodology he or she uses to support his or her opinions is reliable, and that his or her opinion fits the facts of the case and thus will be helpful to the jury. Daubert, 509 U.S. at 589, 591, 592 n. 10; see Norris v. Baxter Healthcare Corp., 397 F.3d at 878, 881 (10th Cir. 2005).

Based on her numerous accolades and years of experience, the Court finds that Dr. Davis is a qualified expert in this field.[1] Dr. Davis's Areas of Testimony Report lists in detail the tests upon which she bases her expert testimony. (Report [DN 239-3] at 1.) First, specifically in the area of false confessions, she includes numerous studies of the causes of wrongful convictions, namely that of the Innocence Project, which studied over 240 wrongful convictions, 16% of which were the product of wrongful confessions. (Id.) Other similar studies have found false confessions implicated in 14% to over 60% of cases. (Id.) She also references an article by Richard A. Leo and Steven A. Drizin, The Problem of False Confessions in the Post-DNA World, 82 N.C. L. Rev. 891 (2004), that discussed 125 cases of false confessions in detail and addressed commonalities between them. (Id.) And, she points to surveys of incarcerated felons, students, and other individuals, experimental laboratory studies of false confessions, and surveys of police detectives. (Id.) Second, in the area of police interrogation techniques, she relies upon

---

[1] Dr. Davis received a Bachelor of Arts in psychology from the University of Texas in 1970 and a Ph.D. in psychology from Ohio State University in 1973. (Disclosures [DN 239-2] at 2.) She was a post-doctoral fellow at Ohio State University for two years, and she has taught at Southern Illinois University, Georgia State University, and the University of Nevada, Reno, where she is currently a professor of psychology. (Id.) She has worked in her current position since 1978 and she has been a member of the faculty of the National Judicial College since 2012. (Id.) Additionally, she has published approximately twenty-two articles and chapters on police interrogations and confessions, has presented approximately sixteen times on this topic at conferences for scientific organizations, and has presented approximately fourteen times at continuing legal education events and the National Judicial College. (Id.) She was awarded research grant in 2012 from the Department of Justice/Federal Bureau of Investigation, she has completed basic training seminars offered by John Reid and Wicklander-Zulawski, and has served as an expert witness several times, testifying in sixteen states from Alaska to New York. (Id.)

the Reid method of interrogation, which is used by professional training organizations such as John E. Reid & Associates, Inc. and Wicklander-Zulawski & Associates, the FBI, and local police departments. (Id. at 2). This method has been documented and utilized in various publically available training books, FBI workbooks, and in local police training seminars. (Id.) She additionally references a study by Saul Kassin, a professor and scholar of psychology, which found that roughly 40% of suspects falsely confess in order to be released. (Id. at 10.) Dr. Davis's Areas of Testimony report shows that the tests she intends to use have been published and are generally accepted among psychologists in her field and by law enforcement officers across the country. See Daubert, 509 U.S. at 594–95 (listing non-exclusive factors that weigh into a reliability determination, including whether the method has been published and subject to peer review, and whether the witness' method is generally accepted as reliable in the relevant medical and scientific community). Thus, Dr. Davis's report appears sound, has a solid foundation, and utilizes accepted publications and studies regarding the psychology of false confessions and police interrogation techniques. United States v. Hall, 974 F. Supp. 1198, 1205 (C.D. Ill. 1997), aff'd, 165 F.3d 1095 (7th Cir. 1999) ("[T]he science of social psychology, and specifically the field involving the use of coercion in interrogations, is sufficiently developed in its methods to constitute a reliable body of specialized knowledge under Rule 702.").

The Government's objection to Dr. Davis's testimony falls under the third requirement of Rule 702 that the testimony be helpful to the jury. Specifically, the Government argues that because Defendant did not suffer from any mental or psychological condition, Dr. Davis's testimony is irrelevant, as "[e]vidence of the type proposed by Dr. Davis has generally only been allowed in cases where the defendant suffers from a mental condition that makes him more susceptible to false confessions." (Renewed Objection [DN 239] at 2.) It is true that many other

courts have often permitted false confession expert testimony to explain how a defendant's mental illness or psychological condition rendered the defendant more susceptible to coercion or persuasion. United States v. Deuman, 892 F. Supp. 2d 881, 887 (W.D. Mich. 2012); see United States v. Hall, 93 F.3d 1337 (7th Cir. 1996) (concluding that the district court erred in excluding the testimony of a psychologist who would have testified about the defendant's mental condition that rendered him more susceptible to coercive interrogation techniques); United States v. Shay, 57 F.3d 126, 133 (1st Cir. 1995) (ruling that that the district court erred by excluding expert testimony on false confessions because "whether or not the jury had the capacity to *generally* assess the reliability of [defendant's statements in light of the other evidence in the case, it plainly was unqualified to determine without assistance the particular issue of whether [the defendant] may have made false statements against his own interests because he suffered from a mental disorder,"); State v. Oliver, 124 P.3d 493, 506 (Kan. 2005) (distinguishing State v. Cobb, 43 P.3d 855, 887–88 (Kan. 2002), and noting that "[i]t is clear that Cobb did not deal with the particular psychological makeup of the defendant or with the potential for interaction between that makeup and interrogation techniques used by law enforcement. It dealt only with the techniques themselves."); State v. Pate, No. M2009–02321–CCA–R3–CD, 2011 WL 6935329, at *12 (Tenn. Crim. App. Nov. 22, 2011) (holding that the trial court did not err in allowing the defendant's expert to testify about the defendant's particular personality traits and mental conditions that rendered him more susceptible to suggestion than other people).

However, courts have admitted expert testimony on false confessions and police interrogation techniques because this expert testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. In fact, information regarding false confessions has been deemed extremely helpful for jurors because "a common

6

misperception among the public is that once a person confesses to his guilt, he must be guilty." Hall, 974 F. Supp. at 1206. Properly conducted social science research often shows that commonly held beliefs are in error. Hall, 93 F.3d at 1345. "The phenomenon of false confessions and the factors tending to produce such confessions is an area that is beyond the common experience of the ordinary person. Similar to the areas of battered woman's syndrome[, People v. Humphrey, 921 P.2d 1, 3 (Cal. 1996)] and eyewitness identification [People v. McDonald, 690 P.2d 709, 719–20 (Cal. 1984) overruled on other grounds by People v. Mendoza, 4 P.3d 265 (Cal. 2000)], in which expert testimony is offered to disabuse the jury of certain assumptions about human behavior, expert testimony regarding false confessions can serve to refute the commonly held notion that people do not confess to crimes they did not commit." Cason v. Hedgpeth, No. CV 08-4576-JVS (RNB), 2009 WL 1096209, at *11 (C.D. Cal. Apr. 22, 2009).

Specifically, expert testimony regarding false confessions "challenges this perception based on systematic observation of data to which the jury is not privy." Hall, 974 F. Supp. at 1206. This testimony is important because it informs the jury "that a phenomenon known as false confessions exists, how to recognize it, and how to decide whether it fit the facts of the case being tried." Hall, 93 F.3d at 1345. Accordingly, many courts have permitted expert witnesses to testify regarding the risk of a false confession when certain factors are beyond a layperson's typical scope of knowledge. See Lunbery v. Hornbeak, 605 F.3d 754, 760 (9th Cir. 2010) (explaining the importance of expert testimony on false confessions: "she had confessed and it is hard to imagine anything more difficult to explain to a lay jury. After all, people do not just confess to crimes they did not commit, do they? Well, it turns out they sometimes do. Among the hundreds of persons exonerated of serious crimes through DNA testing are numerous individuals

who earlier confessed.") (Hawkins, J. concurring); Caine v. Burge, No. 11 C 8996, 2013 WL 1966381, at *2 (N.D. Ill. May 10, 2013) ("Although jurors' common sense may suggest to them that someone would never falsely confess to committing murder, [expert] testimony will educate jurors that false confessions sometimes do occur. As a result, the Court believes it will be helpful for the jury to hear expert testimony on this issue."); Boyer v. State, 825 So. 2d 418, 420 (Fla. Dist. Ct. App. 2002) (admitting expert evidence on false confessions and allowing the jury to decide whether they believed that the expert's theory or the more commonplace explanation that the confession was true); cf. People v. Page, 2 Cal. App. 4th 161, 181–183 (1991) (upholding exclusion of portions of an expert's proposed testimony in a case in which the trial court permitted the expert to testify generally about factors that might lead to a false confession, but not portions opining on the reliability of the confessions, as the jurors were qualified to make that determination).

The Court agrees that the defendant should be able to proffer a psychological expert to explain to the jury that some defendants give, for whatever reason, false confessions to a crime, and that Defendant has psychological traits that make it possible that he would give a false confession.[2] Dr. Davis has identified potential mental and psychological conditions along with several environmental stressors (sleep deprivation, drug and alcohol use and withdrawal, unrelated emotional distress, etc.) that may have caused Defendant to have been mentally compromised or more susceptible to giving a false confession to law enforcement. How these

---

[2] Numerous other courts have allowed in similar testimony. See United States v. Raposo, No. 98 CR. 185 (DAB), 1998 WL 879723, at *6 (S.D.N.Y. Dec. 16, 1998) (admitting expert testimony on false confessions); United States v. Olafson, 2006 WL 1663011 (N.M. Ct. Crim. App., June 8, 2006) (unpub.) (permitting Dr. Brittan to testify that appellant fit the criteria for those who give false confessions); State v. Buechler, 572 N.W.2d 65, 72–74 (Neb.1998) (holding that the trial court committed prejudicial error when it excluded expert testimony on false confessions); Callis v. State, 684 N.E.2d 233, 239 (Ind. App.1997) (affirming trial court's decision to admit, on limited grounds, expert witness testimony regarding police interrogation tactics); State v. Baldwin, 482 S.E.2d 1, 5 (N.C. App. 1997) (holding that the trial court erred in excluding expert witness testimony that police interrogation tactics made defendant susceptible to giving a false confession).

factors could influence a false confession are well beyond the purview of a layperson; therefore, Dr. Davis's testimony would be helpful to the jury.

Moreover, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." Fed. R. Evid. 702, advisory committee's note (2000 amendments). As the Court in Daubert stated: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 595 (citing Rock v. Arkansas, 483 U.S. 44, 61 (1987)). Here, many of the Government's objections to Dr. Davis's testimony can be explored and challenged during cross-examination. For example, the Government argues that Dr. Davis mischaracterized Defendant's mental condition to make him appear more troubled than he actually is and that Defendant did not suffer from any mental disorder or stressor that would have been likely to cause his purportedly false confession. The Court concludes that these alleged shortcomings do not provide a basis for barring Dr. Davis's testimony, but obviously provide ample areas for cross-examination. See Caine, 2013 WL 1966381, at *2.

Though the Court is willing to admit Dr. Davis's testimony, the Court will not, as apparently any court will not, allow Dr. Davis to opine as to whether Defendant gave a false confession. Drawing this line prevents Dr. Davis from invading the province of the jury, provides relevant and useful information to lay members of the jury, and does not allow Dr. Davis to offer testimony on the credibility of Defendant. It simply gives the jury the tools to make an informed decision about false confessions, which appear to actually occur. The public may not be aware of false confessions as much as those individuals in the criminal justice system, and the expert could provide valuable insight necessary to assure Defendant's Sixth Amendment right to present a complete defense. See generally Crane v. Kentucky, 476 U.S.

683, 684 (1986) (ruling that the lower court's exclusion testimony about the physical and psychological environment in which the confession was obtained, in order to prove that the confession was unreliable, deprived the defendant of his Sixth and Fourteenth Amendment right to present a complete defense). The Court believes, particularly with careful limiting instructions, that a jury could distinguish between information about psychologists' beliefs about false confessions and whether Defendant falsely confessed through their own credibility determinations.

The Government also objects to the introduction of Dr. Davis's testimony because it is likely to prejudice the jury under Rule 403. Although the evidence will be prejudicial to the Government, the Court cannot say that the prejudice to the Government will substantially outweigh the probative value of the evidence. Axiomatically, evidence that one party presents in support of its position invariably prejudices the opposing party. Dr. Davis will not opine that Defendant's statements should be disregarded as false. Many courts that disallow false confession expert testimony take issue with the fact that "the prejudice to the prosecution that would result from permitting an expert to opine that prior confessions should essentially be disregarded because they are just as likely to be true as untrue" and that this prejudice "substantially outweighs the testimony's minimal probative value." United States v. Benally, 541 F.3d 990, 995 (10th Cir. 2008); see United States v. Deuman, 892 F. Supp. 2d 881, 890–91 (W.D. Mich. 2012). However, Dr. Davis will be limited to explaining to the jury the interrogation techniques and tactics used by law enforcement, Defendant's mental and psychological issues, and how the two relate. The determination of falsity of the confession will ultimately be left to the jury. The Court thus finds that the probative value of Dr. Davis's testimony, insofar as it relates to police interrogations, false confessions, and Defendant's

psychological condition is not substantially outweighed by danger of undue prejudice to the Government.

Accordingly, the Court will allow Defendant to introduce Dr. Davis's expert testimony regarding false confessions and police interrogation tactics, but will limit that testimony by prohibiting her from making a determination as to whether Defendant actually made a false confession to law enforcement.

### III. Conclusion

For the reasons set forth above, **IT IS HEREBY ORDERED** that Plaintiff's Renewed Objection to Dr. Davis's expert testimony [DN 239] is **OVERRULED**.

*Joseph H. McKinley*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

August 18, 2016

cc: counsel of record