UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**CIVIL ACTION NO. 3:13-cv-00170-JHM**

**UNITED STATES OF AMERICA**                                                             **PLAINTIFF**

**V.**

**JESCELL WHITTLE**                                                                           **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion for a New Trial [DN 278]. Fully briefed, this matter is ripe for decision. For the following reasons, the Court holds that Defendant's Motion is **DENIED**.

### I. BACKGROUND

Defendant Jescell Whittle was arrested on November 8, 2012 and was suspected in connection with several robberies that occurred in October of 2012, including: the robbery of a Cricket Wireless store located at 4443 Cane Run Road, Louisville, Kentucky, on October 22, 2012, the attempted robbery of a Cricket Wireless store located at 3125 W. Broadway, Louisville, Kentucky, on October 23, 2012, the robbery of a Thornton's store located at 4516 Poplar Level Road, Louisville, Kentucky, on October 30, 2012, and the robbery of a Speedway store located at 3030 Taylor Boulevard, Louisville, Kentucky, on October 31, 2012. (Order [DN 243] at 1–3.) He was later identified by a victim in a fifth robbery, as being one of the individuals who robbed the JC Cigarette Outlet store located at 2714 Crums Lane, Louisville, Kentucky, on October 29, 2012. (Id.)

The surveillance video from the attempted robbery of the Broadway Cricket Wireless depicted two black males entering the business through the front door. Both were wearing hoodies and approached the clerk who was stationed behind the counter. One man wore a bright

multicolored hoodie and brandished a chrome revolver, while the other, leaner man wore a black hoodie. The men acted like they were there to pay their phone bills and demanded cash from the clerk. Instead of obeying their requests, the clerk ran to a back office and hid. Both men retreated without obtaining any property.

The surveillance videos of the Speedway robbery show three black men enter the store wearing hoodies. During the robbery, the men order the customers to get on the ground. They then took property from the customers, and one of the robbers discharged his weapon, shooting one customer in the back. The men escaped with customer and Speedway property.

On August 23, 2016, Whittle was tried by a jury for all robberies except the robbery of the Thornton's store. On August 30, 2016, Whittle was convicted of one count of attempted robbery (relating to the Cricket Wireless store on Broadway), one count of robbery (relating to the Speedway store), and two counts of using, brandishing, or discharging a firearm during and in relation to a crime of violence. (Jury Verdict [DN 275] at 3–8.)

During the trial, the United States played a recording of an interview between Detective Aleasha Rhudy and Whittle after Whittle had been arrested and was in custody. During this interview, Detective Rhudy relayed to Whittle statements made by his co-defendant, Tony Trumbo. Detective Rhudy's account of Trumbo's statements implicated Whittle in the Broadway Cricket Wireless and Speedway robberies. Additionally, Whittle confessed to being involved in the attempted robbery of the Broadway Cricket Wireless store, to having a .22 caliber revolver (the same type of weapon as was used in this attempted robbery), and to wearing the multicolored hoodie. He further confessed to being involved in the robbery of the Speedway store and that he was the one who shot the customer in the back. He described the clothes he wore during this robbery as a black Carhartt hoodie, blue t-shirt, and white Nike shoes. When

Whittle was arrested, he was wearing the white Nikes, and a search of Trumbo's residence revealed Whittle's social security card, a size 4XL black Carhartt hoodie, and a size 5XL blue t-shirt.

Prior to trial, Defense counsel moved to have the portions of the confession relating to Trumbo's statements redacted; however, the Court allowed the prosecution to play the entire recording of Whittle's entire confession. Now, Whittle has filed the instant Motion claiming that his rights under the Confrontation Clause of the Sixth Amendment were violated when the Court allowed Detective Rhudy's account of Trumbo's out-of-court statements.

## II. STANDARD OF REVIEW

Rule 33 provides that "[u]pon the defendant's motion, [a district] court may vacate any judgment and grant a new trial if the interest of justice so requires." United States v. Munoz, 605 F.3d 359, 373 (6th Cir. 2010) (quoting Fed. R. Crim. P. 33(a)). Rule 33's "interest of justice" standard allows the grant of a new trial where substantial legal error has occurred. Id. (citing United States v. Wall, 389 F.3d 457, 474 (5th Cir. 2004) (stating that "any error of sufficient magnitude to require reversal on appeal is an adequate ground for granting a new trial")); United States v. Kuzniar, 881 F.2d 466, 470 (7th Cir. 1989) (stating that Rule 33 relief is available where "the substantial rights of the defendant have been jeopardized by errors or omissions during trial"); United States v. De Miranda, No. CRIM.NO.2008-20, 2008 WL 5412848, at *3 (D.V.I. Dec. 29, 2008), aff'd, 360 F. App'x 295 (3d Cir. 2010) (stating that Rule 33 relief is available where defendant "show[s] . . . reversible error at his trial").

"The decision to grant or deny a new trial rests within the district court's sound discretion." United States v. Seago, 930 F.2d 482, 488 (6th Cir. 1991). "[T]he defendant bears the burden of proof that a new trial is warranted and 'such motions should be granted sparingly

and with caution.'" United States v. Dolan, 134 F.3d 372 at *3 (6th Cir. 1997) (quoting United States v. Turner, 995 F.2d 1357, 1364 (6th Cir. 1993)).

### III. DISCUSSION

**A. Confrontation Clause**

The Confrontation Clause of the Sixth Amendment states: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The primary purpose of the Confrontation Clause is to prevent out-of-court statements from being used against a criminal defendant in lieu of in-court testimony subject to the scrutiny of cross-examination. Crawford v. Washington, 541 U.S. 36, 50 (2004); see e.g. Douglas v. State of Ala., 380 U.S. 415, 418–19 (1965). However, there is no Confrontation Clause issue when out-of-court statements are admitted for purposes other than showing the truth of the matter asserted. Crawford, 541 U .S. at 59 n. 9; see, e.g., Williams v. Illinois, 132 S.Ct. 2221, 2227–28 (2012); Michigan v. Bryant, 562 U.S. 344, 367 n. 11 (2011); Tennessee v. Street, 471 U.S. 409, 414 (1985).

Here, Whittle argues that Detective Rhudy's representations of Tony Trumbo's statements that implicated Whittle in the Broadway Cricket Wireless attempted robbery and the Speedway robbery are inadmissible hearsay, which violated Whittle's Sixth Amendment right because Trumbo did not testify. Whittle argues that Trumbo's statements are inadmissible hearsay because they were testimonial and introduced to prove the truth of the matter asserted. The United States argues that Trumbo's statements were introduced for two non-hearsay purposes: 1) not to prove the truth of the matter asserted, but to give context to Whittle's incriminating statements throughout the course of the confession, and 2) to rebut the contention that Whittle's confession was the product of unduly or unfair coercion by law enforcement.

The Confrontation Clause prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the declarant is unavailable to testify and the defendant had a prior opportunity for cross-examination. See Crawford, 541 U.S. 36, 59. Testimonial statements include statements taken by police officers in the course of interrogation. Id. at 52–53. Accordingly, under Crawford, Trumbo's statements were testimonial because they were made to law enforcement and could be considered inadmissible hearsay if offered to prove the truth of the matters asserted. However, the Confrontation Clause does not apply to non-hearsay, that is, it "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Crawford, 541 U.S. at 40.

The United States contends that Trumbo's statements relayed via Detective Rhudy were not hearsay, and did not implicate the Confrontation Clause, because they were not introduced for their truth but rather to supply context for Whittle's responses to Detective Rhudy's questions.[1] When an out of court statement is not offered to prove the truth of the matter asserted, and instead, is offered to make the defendant's statements intelligible as an admission and place them in context, the Confrontation Clause is not implicated. United States v. Stines,

---

[1] The United States alternatively argues that Whittle waived his Confrontation Clause rights because defense counsel, by asking Detective Rhudy about Trumbo's statements (when the prosecution did not ask about Trumbo's admissions), opened the door to the Trumbo testimony and used it to benefit the defense's case in proving that Whittle's confession was coerced. The Sixth Circuit has "noted that 'a defendant [] forfeits his confrontation right if his own wrongful conduct is responsible for his inability to confront the witness.'" United States v. Pugh, 405 F.3d 390, 400 (6th Cir. 2005) (quoting United States v. Cromer, 389 F.3d 662, 679 (6th Cir. 2004) (providing the example of a witness who is "unavailable to testify because defendant has killed or intimidated her")). Or, if the defendant opens the door "to the admission of evidence otherwise barred by the Confrontation Clause," the waiver must be "clear and intentional." United States v. Holmes, 620 F.3d 836, 843–44 (8th Cir. 2010) (citing United States v. Lopez-Medina, 596 F.3d 716, 733 (10th Cir. 2010); United States v. Acosta, 475 F.3d 677 (5th Cir. 2007); United States v. Lee, 374 F.3d 637, 649 (8th Cir. 2004)). Here no evidence of Whittle's wrongful misconduct was presented in order to waive his Sixth Amendment rights. Whittle also objected to Trumbo's statements being introduced and the Court cannot identify a clear and intentional waiver of his rights. Defense counsel questioned Detective Rhudy about Trumbo's statements only after they had been introduced and only with regard to Detective Rhudy's interrogation tactics, not to the extent that Detective Rhudy discussed Trumbo's and Whittle's involvement in the robberies. See Lopez-Medina, 596 F.3d 716, 733 (finding defense counsel opened the door only to the officer's information tying the defendant to a particular location, not opening it fully to include the officer's recitation of the out-of-court statements the third party said that implicated the defendant). Accordingly, the Court cannot say that Whittle did waived his Sixth Amendment rights under the Confrontation Clause.

313 F.3d 912, 919 (6th Cir. 2002); see United States v. Liriano, 761 F.3d 131, 136–37 (1st Cir. 2014); United States v. Cruz-Diaz, 550 F.3d 169, 176 (1st Cir. 2008); United States v. Foster, 701 F.3d 1142, 1150–51 (7th Cir. 2012); United States v. Crippen, 627 F.3d 1056 (8th Cir. 2010); U.S. v. Rodriguez, 484 F.3d 1006, 1013–14 (8th Cir. 2007), cert. denied, 552 U.S. 890 (2007); United States v. Bobb, 471 F.3d 491, 499 (3d Cir. 2006).[2]

Whittle takes issue with three specific examples of statements made by Detective Rhudy during Whittle's recorded confession. In the first, Detective Rhudy states:

> I know you don't want to say anything about anybody else, but uh, [co-defendant]—just for the tape—[co-defendant] Tony Trumbo, uh, has stated that he is the person in the gray hoodie at the bottom. And he signed a photos [sic], a separate, uh a separate print out of these same photos.

(Def.'s Mot. [DN 278] at 7.) It is important to first note that this statement does not, in any way, implicate Whittle. It is a statement that Trumbo had identified himself in the photograph in question. In the second statement, Detective Rhudy represented:

> Tony has already signed, um, that he's this bottom male in the blue jacket, holding the bag of money, uh. And then, he's talked about who this male in the middle is holding a gun. And the male at the top is you. It's the same photos we separated and put over here. Um, that's just for the tape so we know who's who on this page where everybody's together.

(Id. at 7–8.) Once again, Trumbo identified himself and another male, but it is unclear as to whether Trumbo identified the "male at the top" or if Detective Rhudy herself identified that man as Whittle. Lastly, in the third statement, Detective Rhudy remarked:

> Before we end the statement, I have to put on here – Tony claims that he and you, um, did the Thorton's on Poplar Level one night and the other Cricket on Crums. He says you showed up at his house after, afterwards. Now, wearin' that tan safari hat.

---

[2] This exception to the Confrontation Clause has had a long and storied history across virtually all circuit courts of appeals. United States v. McDonald, 173 F.3d 430 (6th Cir. 1999); United States v. Sorrentino, 72 F.3d 294, 298 (2d Cir. 1995); United States v. Cantano, 65 F.3d 219, 225 (1st Cir. 1995); United States v. Cheramie, 51 F.3d 538, 540 (5th Cir. 1995); United States v. Rollins, 862 F.2d 1282, 1296 (7th Cir. 1989); United States v. Jordan, 810 F.2d 262, 264 (D.C. Cir. 1987); United States v. Whitman, 771 F.2d 1348, 1351 (9th Cir. 1985).

(Id. at 8.)

The question before the Court is whether these statements were offered to prove the truth of the matter asserted—that Trumbo and Whittle committed these crimes—or for some other non-hearsay purpose. The United States first argues that the statements were introduced to provide context for Whittle's confession. Many courts have found that similar representations made by law enforcement containing statements made by co-defendants were not introduced for the truth of the matters asserted within, but were asserted in order to provide context for the defendant's incriminating statements and admissions. See Restivo v. Lattimore, No. SA CV 08-1028-MMM E, 2010 WL 5563893, at *9–11 (C.D. Cal. Sept. 7, 2010), report and recommendation adopted, No. SA CV 08-01028-MMM E, 2010 WL 5564219 (C.D. Cal. Dec. 31, 2010) (finding no error in allowing the jury to hear [the detective's] assertions concerning [a co-defendant's] alleged statements for the sole purpose of giving context to [the defendant's] interview statements"); Woods v. Wolfe, 2008 WL 2371401, at *4–12 (S.D. Ohio June 10, 2008) (finding no Confrontation Clause error to introduce evidence of officer's statement to defendant that defendant's potential alibi witness had failed to corroborate the defendant's alibi when questioned by the officer; the statements were not hearsay, but were offered to explain the context); State v. Lambert, 232 W. Va. 104, 112, 750 S.E.2d 657, 665 (2013) (holding "that where the out-of-court statements of a non-testifying individual are introduced into evidence solely to provide foundation or context for understanding a defendant's responses to those statements, the statements are offered for a non-hearsay purpose and the introduction of the evidence does not violate the defendant's rights"); Hall v. Com., No. 2007-SC-000194-MR, 2009 WL 2707225, at *7 (Ky. Aug. 27, 2009) (finding that "[b]ecause the [d]etective's purported quotes were not introduced for the truth of what [the co-defendants] purportedly said, but rather

to provide context for [the defendant's] statements and admissions . . . the unredacted interview did not violate" the Confrontation Clause"); State v. Roque,141 P.3d 368, 388–89 (Ariz. 2006) (no Confrontation Clause error to introduce videotaped interrogation of defendant wherein police detectives told the defendant that his wife had made statements to the detectives incriminating the defendant).

In these situations, context is exceedingly important in understanding the content of and circumstances surrounding a confession. In fact, "a defendant, having made admissions, [cannot] keep from the jury other segments of the discussion reasonably required to place those admissions into context." United States v. McDowell, 918 F.2d 1004, 1007 (1st Cir. 1990). The other parts of the discussion are "properly admitted as reciprocal and integrated utterance(s) to put [the defendant's] statements into perspective and make them intelligible to the jury and recognizable as admissions." Id.

Whittle argues that Trumbo's statements were not necessary to understand Whittle's statements, and instead were offered for their truth. Specifically, Whittle contends that Detective Rhudy's made affirmative representations about Trumbo's out-of-court statements that were gratuitous and not in the form of questions, as she informs Whittle that she's saying certain things "just for the tape." Further, Whittle asserts that Detective Rhudy's statements were nonresponsive interjections, which did not require a response, nor elicit one.

While Whittle is correct that Detective Rhudy's statements were not necessarily posed as questions, this does not mean that they were offered for the truth rather than for context. Detective Rhudy's statements were properly included in order to not only provide the foundation and context for understanding Whittle's forthcoming admissions, but also for understanding how Whittle responded to these assertions. His response to Detective Rhudy's assertions gives her

8

statements probative value as a part of the entire exchange. See Swain v. State, 459 S.W.3d 283, 286 (Ark. 2015), reh'g denied (May 14, 2015), cert. denied, 136 S. Ct. 266 (2015); (finding that detective's statements attributed to co-defendants were properly admitted to demonstrate how the defendant's responses changed as she was confronted with what the detectives had already been told); State v. Lambert, 750 S.E.2d 657, 665 (W.Va. 2013) (finding out-of-court statements properly admitted when they provide understanding for the defendant's response to the statements); Estes v. State, 249 P.3d 313 (Alaska Ct. App. 2011) (emphasizing that the out-of-court statements were properly admitted for the purpose of illustrating how the defendant responded to the statements). In fact, "police interrogators frequently confront suspects with supposed statements by victims, witnesses, or co-defendants, and that the point of these challenges is not the truth of the supposed statement . . . but rather the response elicited from the suspect." Hall v. Com., No. 2007-SC-000194-MR, 2009 WL 2707225, at *7 (Ky. Aug. 27, 2009); see State v. Roque,141 P.3d 368, 388–89 (Ariz. 2006) ("[T]he detectives' report of what [the defendant's wife] said was not being offered at trial for the truth of the matters allegedly asserted by [the wife] and therefore did not constitute hearsay. Instead, the detectives were using an interrogation technique to elicit a confession from [the defendant].")

Whittle argues further that he confessed to the crimes prior to Detective Rhudy's statements regarding Trumbo, meaning Detective Rhudy's statements did not elicit incriminating responses from Whittle. However, Whittle's admissions were part of an eighteen minute long recorded interview. Whittle has pointed to three statements over the course of the eighteen minutes (one at the 2:28 mark, one at the 5:56 mark, and one at the 16:55 mark) in which Detective Rhudy referenced Trumbo's statements. Each of Detective Rhudy's statements regarding Trumbo's admissions gave Whittle the opportunity to respond and either confirm or

9

deny his involvement. Each of these statements provided context for the progression of the confession and demonstrated to the jury the consistency of Whittle's responses. As a result, the United States properly entered the entire recording in order to show how Whittle reacted to Detective Rhudy's statements and how Whittle's admissions remained constant over the course of the recording.[3] Therefore, because the statements were introduced to provide context, generate admissions from Whittle, and show the consistency of Whittle's responses, not to prove the truth of the matters asserted, they were not hearsay and do not raise any constitutional issues under the Confrontation Clause.

Additionally, the United States contends that it introduced Whittle's confession in full in order to rebut his argument that his confession was coerced. Whittle made the argument that he gave a false confession due to the interrogation techniques used by law enforcement officials. To make this point, Whittle called an expert, Dr. Deborah Davis, to testify to the fact that defendants like Whittle, based personal characteristics and the interrogation techniques used by law enforcement, are likely to give false confessions under certain circumstances. (Mem. Op. [DN 247] at 4–8 (allowing Davis to testify regarding false and coerced confessions); Davis'

---

[3] Whittle relies upon United States v. Amaya, 828 F.3d 518, 528 (7th Cir. 2016) to prove that the statements by Trumbo via Detective Rhudy were offered for the truth of the matter asserted rather than to provide context. Amaya illustrates how a confidential informant's remarks (and the defendant's subsequent response) can be offered for the truth of the matter asserted instead of context. Id. In this case, the Seventh Circuit noted that

> [W]hether a statement is offered for "context" is beside the point—the relevant question is whether the statement is offered for its truth (and the answer to that question can be yes, even if the statement provides context for some other, admissible statement). An example from Smith—a public-corruption case—is helpful. "[Informant]: Last week I paid you $7,000 for a letter that my client will use to seek a grant for a daycare center. Do you remember? [Defendant]: Yes." [United States v. Smith, 816 F.3d 479, 82 (7th Cir. 2016).] The defendant's statement is admissible, Fed. R. Evid. 801(d)(2)(A), but the informant's is not. Though it puts the defendant's statement in context, it only does so (and is only relevant) if the informant was speaking the truth.

Here, Trumbo never said anything directly to Whittle that elicited a direct response. Instead, Detective Rhudy relayed Trumbo's statements in order to elicit a response from Whittle and to put Whittle's confession as a whole into context. For the purposes of the confession it did not matter whether Trumbo's statements were true or false; Detective Rhudy was hoping to elicit a response independent of that fact from Whittle about his personal involvement in the robberies. For this reason, Amaya is inapposite.

Areas of Testimony [DN 239-3] at 2–9 (discussing coercive interrogation techniques).) During his trial, Whittle attempted to sow the seeds of doubt in the jurors' minds that his confession was true and accurate and to prove that he gave a false confession under coercion.

"When a defendant asserts that his confession was involuntary, out-of-court statements may be introduced to explain how and why a defendant made a confession." Andrade v. Martuscello, No. 12 CIV. 6399 RJS AJP, 2013 WL 2372270, at *14 (S.D.N.Y. June 3, 2013) (citing Tennessee v. St., 471 U.S. 409, 413–14 (1985); Harris v. New York, 401 U.S. 222, 225–26 & n. 2 (1971)). Under these circumstances, no Confrontation Clause issues arise, as the out-of-court statements are not offered to prove the truth of the matters asserted, but to address the coercive nature of the confession. See Street, 471 U.S. at 414; see also Crawford, 541 U.S. at 59 n.9; United States v. Stines, 313 F.3d 912, 919 (6th Cir. 2002). Specifically, the right to confront witnesses under the Sixth Amendment does not apply when the non-testifying co-defendant's testimony is admitted for non-hearsay purposes such as this one. See generally United States v. Cope, 312 F.3d 757, 780–81 (6th Cir. 2002) (citing Street, 471 U.S. at 414).

Specifically, in Tennessee v. Street, the Supreme Court found that evidence of non-testifying co-conspirator's confession, read aloud by the testifying sheriff, was admissible to show that the defendant's confession was not coerced. Street, 471 U.S. at 414. The defendant testified that his confession "was derived from a written statement that [a non-testifying co-defendant] had previously given the Sheriff[, and] Sheriff Papantoniou read from [the non-testifying co-defendant's] statement and directed [defendant] to say the same thing." Id. at 411. During the trial, the non-testifying co-defendant's statement was introduced to highlight the differences between the defendant's and co-defendant's confessions to prove that the defendant's confession was not a coerced imitation. Id. at 413–14. The Court stated:

> [T]he prosecutor did not introduce [the non-testifying co-defendant's] out-of-court confession to prove the truth of [the non-testifying co-defendant's] assertions. Thus, as the Court of Criminal Appeals acknowledged, [the non-testifying co-defendant's] confession was not hearsay under traditional rules of evidence. . . .
>
> The [*non-hearsay*] aspect of [the non-testifying co-defendant's] confession—not to prove what happened at the murder scene but to prove what happened when respondent confessed—raises no Confrontation Clause concerns. The Clause's fundamental role in protecting the right of cross-examination was satisfied by Sheriff Papantoniou's presence on the stand. If respondent's counsel doubted that [the non-testifying co-defendant's] confession was accurately recounted, he was free to cross-examine the Sheriff. By cross-examination respondent's counsel could also challenge Sheriff Papantoniou's testimony that he did not read from [the non-testifying co-defendant's] statement and direct respondent to say the same thing. In short, the State's rebuttal witness against respondent was not [the non-testifying co-defendant], but Sheriff Papantoniou.

Id.

Here, defense counsel argues that Detective Rhudy's interrogation technique that utilized Trumbo's statements violated Whittle's Confrontation Clause rights. However, the defense used Detective Rhudy's statements to its advantage during trial in order to prove that Detective Rhudy used a deceptive interrogation technique while interviewing Whittle. The defense attempted to establish that this deception resulted in Whittle's coerced confession. For example, the defense asked Detective Rhudy if playing two defendants against each other was a common interrogation tactic and she said that it was used in this case. (Gov.'s Resp. [DN 288] at 9.) And, in closing, the defense asked the jury if Detective Rhudy's was engaging in deception by relaying Trumbo's statements to Whittle. (Id.) Despite defense counsel's contention that Detective Rhudy's assertions to Whittle violated his Confrontation Clause rights, referencing out-of-court statements by third parties has been described as "a valid interrogation technique" that many courts have allowed to be introduced at trial not for the truth of the purported statements, but only to show why and how the defendant's confession evolved as it did. Hall v. Com., No.

2007-SC-000194-MR, 2009 WL 2707225, at *7 (Ky. Aug. 27, 2009) (citing Woods v. Wolfe, 2008 WL 2371401 (S.D. Ohio 2008); State v. Roque, 213 Ariz. 193, 141 P.3d 368 (Ariz. 2006); Lanham v. Commonwealth, 171 S.W.3d 14 (Ky.2005) (noting that officers may confront a suspect with their belief that he has not been truthful); State v. Mannion, 637 A.2d 452 (Me. 1994); Commonwealth v. Pelletier, 879 N.E.2d 125 (Mass. App. 2008)).

More importantly, Detective Rhudy's references to Trumbo's out-of-court statements did not violate the Confrontation Clause because the references were used to explain the background of Whittle's confession and to directly rebut the defense's argument that the detectives coerced the confession.[4] The United States introduced the entire confession into evidence for the non-hearsay purpose of demonstrating to the jury that the confession was not given under unduly coercive circumstances, which was neither contrary to, nor an unreasonable application of, clearly established federal law. Andrade, 2013 WL 2372270, at *18; see, e.g., United States v. Cruz-Diaz, 550 F.3d 169, 179 (1st Cir. 2008) (finding the district court's admission of a co-defendant's out-of-court statement not in error since it was offered not to prove the truth of the matter asserted but to rebut the defendant's attempt to cast doubt on the integrity of the government's investigatory efforts); Lewis v. Burge, No. 06–CV–0513, 2012 WL 2923076 at *9 (W.D.N.Y. July 17, 2012) (introduction of co-defendant's confession to rebut petitioner's "claim that his own confession was coerced and a complete fabrication" was a legitimate, non-hearsay purpose and did not violate the Confrontation Clause); Bryant v. Graham, No. 08 CV 4666, 2011 WL 3876972 at *10 (E.D.N.Y. Sept. 1, 2011) ("It is not objectively unreasonable to conclude that the fact that [the detective] told petitioner that [co-defendant] had implicated him was

---

[4] Though Street addresses the situation in which the prosecution brings in non-hearsay statements contained in a confession as a part of its rebuttal, the fact that the out-of-court statements were brought in on the prosecution's direct case "raises no constitutional claim." Andrade, 2013 WL 2372270, at *17. In fact, "[i]t is clear that out-of-court statements may be introduced to explain how and why a confession was made when the defendant asserts that it was involuntary." Id.

13

offered and admitted for a legitimate non-hearsay purpose within the meaning of Tennessee [v. Street], i.e., 'not to prove what happened at the murder scene but to prove what happened when [petitioner] confessed.'"); Gibbons v. Ercole, 05 Civ. 9413, 2010 WL 3199869 at *6 (S.D.N.Y. Aug. 12, 2010) (The detective "described the informant's statements to establish how he developed a photo array of suspects, not for the truth of what the informant said. This use of testimonial hearsay does not violate the Confrontation Clause. Accordingly, the Court rejects [petitioner's] argument that the trial court violated his Sixth Amendment right to confrontation."); Reyes v. Ercole, No. 08–CV–4749, 2010 WL 2243360 at *9 (E.D.N.Y. June 1, 2010) (finding that references to the out-of-court statements were used to rebut the defense argument that the detectives coerced the confession not in violation of the Confrontation Clause); United States v. Welton, No. CR 09-00153 MMM, 2009 WL 2390848, at *12 (C.D. Cal. Aug. 1, 2009) (finding proper the admission of a third party's out-of-court statements, as they were admitted for what they showed "regarding coercion or lack of coercion during the interview" of the defendant).

Further, it was important here for the jury to hear Whittle's *entire confession* in order to be sure that his confession was not the product of unduly coercive interrogation techniques, as Whittle and Dr. Davis had contended. On the one hand, Whittle contends that his confession was coerced, yet, on the other, he asserts that Detective Rhudy made potentially coercive statements containing Trumbo's admissions *after* Whittle had confessed and were not necessary to understand the content of the confession. It was important for the jury to have heard Detective Rhudy's statements in order for the United States to show that Whittle's confession was not the product of unfair or undue coercion, as any of the potentially deceptive or coercive statements were made after Whittle had confessed. However, even if Whittle somehow felt unduly coerced

14

into giving his initial confession at the beginning of the recording, Detective Rhudy's statements gave Whittle the opportunity to either affirm or disavow his earlier admission. Playing the entire confession aided the jury in determining whether or not Whittle's confession was coerced because it allowed the jury to fully and properly evaluate the coercive nature and effect of Detective Rhudy's statements and the interrogation itself and to assess Whittle's admissions and responses to the interrogation. The United States' interest in introducing the entire confession was "legitimate and strong" in order to prove a lack of coercion; a "more sanitized narrative" would not have had the same effect. Cruz-Diaz, 550 F.3d at 179–80. In fact, "[w]ithout this evidence, the jurors would have been left wondering why [Whittle] admitted his guilt, and may have concluded, as urged by the defense, that the police used coercive tactics to secure [Whittle's] confession." Andrade, 2013 WL 2372270, at *15.

Overall, the representations made by Detective Rhudy regarding Trumbo's prior statements were admissible for two distinct non-hearsay purposes. They not only provided context for Whittle's admissions and showed how Detective Rhudy elicited Whittle's responses, but they also rebutted Whittle's argument that his confession was the product of undue coercion. Accordingly, these statements were properly admitted in trial.

**B. Harmless Error**

The United States argues that even Detective Rhudy's statements were improperly admitted into evidence during the trial in violation of the Confrontation Clause, they constituted harmless error. Generally, "Confrontation Clause errors are subject to harmless-error analysis." Vasquez v. Jones, 496 F.3d 564, 574 (6th Cir. 2007). The Court should assess the prejudicial impact of the constitutional error under the Brecht standard that "an error requires reversal only if it 'had substantial and injurious effect or influence in determining the jury's verdict.'" Brecht

v. Abrahamson, 507 U.S. 619, 638 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). Only if the court "is in 'grave doubt about whether or not that error is harmless,'" 'the uncertain [court] should treat the error . . . as if it had a substantial and injurious effect or influence in determining the jury's verdict.'" Gover v. Perry, 698 F.3d 295, 302 (6th Cir. 2012) (quoting O'Neal v. McAninch, 513 U.S. 432, 435 (1995)).

In order to "determine whether a Confrontation Clause error is harmless under Brecht, [the Sixth Circuit] uses the factors discussed in Delaware v. Van Arsdall, 475 U.S. 673 (1986). Id. (citing Vasquez, 496 F.3d at 575). The Van Arsdall factors include: (1) "the importance of the witness' testimony in the prosecution's case," (2) "whether the testimony was cumulative," (3) "the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points," (4) "the extent of cross-examination otherwise permitted," and (5) "the overall strength of the prosecution's case." Van Arsdall, 475 U.S. at 684.

Here, even if the Court erred in admitting Trumbo's three statements relayed to Whittle by Detective Rhudy, the error was harmless. Under the first factor, the importance of Trumbo's statements and Detective Rhudy's account of his statements was minor at best. Whittle points to three examples of Trumbo's statements in the eighteen minute long recording, only one of which directly establishes Whittle's involvement in the robberies. Further, other than playing the recording for the jury, the United States never questioned Detective Rhudy about Trumbo's statements. However, defense counsel did question Detective Rhudy about Trumbo's statements in an attempt to show how Whittle was coerced into giving a false confession. Therefore, the witness's testimony was a minute portion of the prosecution's case, but a large part of the defense's case, which the defense is now claiming is improper. This factor weighs in favor of the United States. The next three factors are not particularly relevant here, but weigh in favor of

the defense. Trumbo's statements were neither cumulative nor corroborated, as they were only referenced for a short period of time during Whittle's confession and Detective Rhudy's testimony, and Trumbo himself did not testify. As to the last factor, the prosecution brought forth physical evidence of Whittle's clothing that matched the clothing in the surveillance videos, provided still photographs from the surveillance videos and the surveillance videos themselves, produced the recording of Whittle's confession to the crimes, and introduced identification evidence and eye-witness testimony linking Whittle to the crime scene. The United States presented a fairly strong case against Whittle, including circumstantial, testimonial, and physical evidence. As such, this factor weighs in favor of the United States. Overall, because Trumbo's admissions were so minimally relevant to the prosecution's case and because the prosecution had ample evidence without Trumbo's statements, any error committed by the Court in the course of the trial was harmless.[5] Accordingly, the Court will deny the Motion for a New Trial.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant's Motion for a New Trial [DN 278] is **DENIED**.

*Joseph H. McKinley*
Joseph H. McKinley, Jr., Chief Judge
United States District Court

November 29, 2016

cc: counsel of record

---

[5] Whittle relies on Harrison v. Chandler, No. 97-5511, 1998 WL 786900, at *6 (6th Cir. Oct. 26, 1998) to support his contention that allowing in Trumbo's statements did not constitute harmless error. In Harrison, however, the prosecution introduced a non-signed, non-recorded confession by a co-defendant through the in-court testimony of a sheriff. Id. at *2. This account of the co-defendant's statements was found to be improperly admitted in violation of the Confrontation Clause because it was unreliable under Fed. R. Evid. 804(b). Id. at *5–*6. The Sixth Circuit focused on the fact that the statement was unreliable, as it was unsworn, unrecorded, and the co-defendant vehemently denied making the statement during a suppression hearing. Id. None of these considerations are relevant in this analysis, rendering this case inapposite.

17